CROWN CORK & SEAL CO. OF BALTIMORE CITY v. BROOKLYN BOTTLE STOPPER CO. et al. SAME v. AMERICAN CORK SPECIALTY CO. et al. SAME v. JOHNSON.

(District Court, E. D. New York. December 2, 1912.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BOTTLE STOPPER.

The Painter patent No. 792,284, for a method of making bottle stoppers or closures, and the Painter patent No. 887,838 and Wheeler patent No. 887,883, each for a machine for practicing such process, and the latter for an improvement thereon, all *held* not anticipated, valid, and infringed.

In Equity. Suits by the Crown Cork & Seal Company of Baltimore City against the Brooklyn Bottle Stopper Company and others, against the American Cork Specialty Company and others, and against Aaron Johnson. On final hearing. Decrees for complainant.

For former opinion, see 190 Fed. 323.

Philipp, Sawyer, Rice & Kennedy, of New York City (Robert H. Parkinson, of Chicago, Ill., and James Q. Rice, of New York City, of counsel), for complainant.

Robert B. Killgore, of New York City (Alfred C. Coxe, Jr., of New York City, of counsel), for defendants.

CHATFIELD, District Judge. Final hearing has been had in the present action, and the record has added nothing to change the conclusions which could have been reached upon the application for a preliminary injunction, wherein, among other matters, the defense of laches and the question of public acquiescence were substantially disposed of. The testimony upon final hearing consists almost entirely

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of opinions and arguments of expert witnesses, more deliberately and carefully presented than upon the application for preliminary injunction, but not changing the questions under consideration thereon, nor offering any new state of facts.

The machines in use by the parties to this action, the patents set forth in the papers upon the preliminary injunction and considered in the former opinion of this court, and, as has been said, the arguments of the experts, have furnished to the court merely a more full and satisfactory opportunity for taking up the precise points which, under the decisions, the court could not consider, in view of the intention of the parties to proceed to a final hearing.

The statement of the various patents involved and of the devices claimed as infringements, together with an analysis of the arguments presented, as set forth in the opinion upon preliminary hearing (reported in [C. C.] 190 Fed. 323), is available, and need not be repeated. We shall proceed at once, embodying that opinion as a part of this decision, with the exception noted below, to analyze the claims of the patents as they are now presented by a completed record.

One statement of the former opinion must be corrected at the outset, as the court described one feature of the Wheeler machine and patent incorrectly, and even, in a way, contradictory to the references to the Wheeler patent in other parts of the opinion.

On page 326 of 190 Fed., in that opinion, at the end of the first paragraph upon the page, the court says that in the Wheeler patent—

"the plungers exert pressure while the caps are carried a certain distance. Then, the plungers being released, the caps are expelled upon the outer or cooled portion of the disk, where the temperature is rapidly reduced, under the influence of a water jacket."

The Wheeler patent and drawings show plainly that the plungers are arranged around the outer or cooled portion of this disk, and exert their pressure while the caps are carried a certain distance by the turning of the cooling ring or disk itself, and are released just before the caps are thrown out of the machine. The expulsion from the heated section onto the cooling ring is previous to the application of the plunger.

The corrected statement of fact shows a situation more nearly like that of the defendants' machines, and brings us to the first defense; that is, noninfringement.

As was said in the former opinion, the defendant Johnson has manufactured machines with a knowledge of the use to which they were to be put. He appears by the record to be a contributory infringer, if infringement be shown against the defendants in the other two actions. The defendant the American Cork Specialty Company and Mr. Mundet, who is personally responsible for its acts in this matter, and the defendant the Brooklyn Bottle Stopper Company, with Mr. Alberti, who is responsible for that company's acts, are using machines containing the same elements, and differing only, as was said in the former opinion, in the manner of transferring the caps from the heated plate to the disk or ring where the plungers operate.

The Brooklyn Bottle Stopper Company's machine has the disk (around which the plungers are arranged) placed in a vertical position, so that gravity is used to take the caps from the star or notched ring of the heating plate; whereas in the American Specialty Company's machine the plunger ring is in a horizontal plane, and takes the caps from the star ring by direct contact at the outer edge of the disks. The court can see no substantial difference between the two methods and the two machines, and either of them plainly infringe the complainant's patents, if the claims of those patents be construed as valid and as meaning what the complainant contends.

It is suggested by the defendants that the Painter and Wheeler patents call for a means of transferring the crown corks from the point where pressure is applied to the point where the cooling process under pressure has sufficiently progressed. Claim 6 of patent No. 887,-838, Painter, and claims 7 and 23 of patent No. 887,883, Wheeler. In claim 7 of the latter patent the "heating means" serves to move the closures to the "pressing means," and the defendants suggest that in the exhibit machine presented in court and made by the defendant Johnson the heating means, viz., the Bunsen burners, does not convey the closures to the plungers, but that the closures are conveyed by an upper or star disk, which conveys the closures over the heat while the heat is stationary. They point out that in the Painter and Wheeler patents the heat is applied in a so-called oven, of which the lower floor or plate actually transmitting heat moves toward the plungers. But this neither changes the principles, nor would take the defendants' machines out from the claims of the complainant's patents, for one arrangement of these heating disks is merely an equivalent of the other, in that heat is applied through radiation; that is, the conveying means is actually a part of the apparatus for applying the heat, whether or not the conveyer be equipped with a second plate. We must therefore pass to the other questions presented by the defense.

Some attack has been made upon the allegations of ownership by the complainant, in that the formal certified copies of the assignments have not been presented in the testimony. But evidence was given that the complainant was granted these patents, and had the right to manufacture under them, and no objection is made upon the ground that this testimony was not the best evidence. It is useless, therefore, to consider the mere denial upon information and belief of what now appears to be uncontested facts.

Another defense is urged, viz., that the Alberti or Brooklyn Bottle Stopper Company machine is an aggregation and not a combination; that is, that the union of the two parts of the machine, by an appliance depending upon the force of gravity, would take that machine out of the category of a combination, and leave merely two machines or devices reciprocating in function. But unless we go so far as to hold that no machine can be an infringing combination, unless there be an invention involved in the precise difference from other devices, the suggested defense is without meaning. Any combination in which equivalents might be substituted for the original structure could be

called an aggregation rather than a combination, if it is separable into distinct parts at the point where the new mechanical equivalent was used.

The defense of multifariousness was disposed of upon preliminary injunction, and this disposition has not been affected by final hearing, except in so far as the point is involved in the general considerations of validity and invention, when contrast is made of the various claims of the different patents.

The Painter machine for making crown corks, and the Painter method patent, contemplated the exertion of pressure simultaneous with or during the process of heating, and the continuance of the pressure contemporaneous with an increase of temperature of considerable extent and until cooling took place. The Wheeler patent is diametrically opposed to the increase of temperature after pressure has been applied. But Wheeler patented a combination making use, in this particular, of Painter's idea of applying the pressure to the heated crown and continuing the pressure until cooling occurred, but not containing Painter's idea of either simultaneous or further heating with the pressure. If Painter had patented only the one form of operation, viz., to press and then heat, of course that operation could not exist conjointly with the operation of heating and then pressing, for one is the converse of the other; but the teaching of Painter's method patent and its claims are broad enough to cover heating first and then pressure until cooling occurs, and Wheeler could not get a valid patent for a method of that sort, but he could get a valid combination patent for the machine he invented, which used the idea of the Painter method generally, with a new application of means to procure the result, and with a radical departure from Painter's preferred plan of application on the one point.

Therefore joint use of the Painter method patent and the Wheeler patent, and of many claims of the Painter apparatus patent and the Wheeler patent, would leave out this one step of the Painter method patent as he concluded it would operate best; but the court is unable to find the complaint multifarious because some applications of the Painter method and apparatus patents could not be consistently combined in operation with some claims of the Wheeler apparatus patent in one machine.

The court previously held that the prior art was almost entirely barren of patents affecting the issue of this case. The record at final hearing furnishes nothing more than was presented upon preliminary injunction. The case as to the prior art still presents the Zeidler patent No. 373,001, November 8, 1887, the France patent, No. 392,794, November 13, 1888, the Gray patent, No. 575,424, January 19, 1897, and the old Thompson patent, No. 104,794, June 28, 1870, all of which teach, in one form or another, the sole point in respect to this case, that two surfaces set with adhesive, such as carpenter's glue, or with a substance forming a solvent in place of the glue, require time or cooling for the proper setting of the adhesive, and for a permanent holding in place of the surfaces joined. This idea was not patentable, and when used by Painter or Wheeler could not be patented, except

in the sense of reliance thereon merely as a basic or necessary step in the formation of a method or machine which would produce a new product in an original and useful way, or where the application of the old idea was carried out in connection with other ideas to a new result.

The record in the present case does show that the crown cork, as manufactured and as recognized by the public, has produced a useful and new result; and the testimony also shows that its availability and general adoption is dependent upon its satisfactory adaptation, with comparatively perfect results in the use which has been so readily accepted. Hence to hold that no invention is possible, because the well-known principles of evaporation and solidification have been disclosed in other patents for different devices, but with like application of those principles, would prevent the finding of invention in any structure where a similar application might be found in an entirely different art, and where the teaching of that application would not be suggested by any amount of study or familiarity with the other art.

The invention shown in the Painter patents was the result of a study of the needs shown in the making of crown cork seals, and if Painter disclosed invention, and has properly stated it in his claims, and if Wheeler has used that invention and also properly stated his claims, the patents should be upheld, under familiar rules, even though the invention now be shown to be exceedingly simple, when discussed on the same basis as simple inventions in other arts.

The Thompson patent happens to have to do with a durable cork or stopper for bottles, but in other respects has no more to do with the art of making crown corks than have the other patents mentioned.

The Perkins patent, No. 234,423, November 16, 1880, and the Asche patent, No. 620,083, February 21, 1899, are typical of devices employing a number of structures with plungers arranged in a circle, by which multiplication of result, in the soldering of parts of tin cans, is employed for the saving of time and lessening of cost in making the product.

In so far as the Painter and Wheeler patents involve the mere multiplication of plungers, the idea is old, and was old when employed in the Asche and Perkins patents; and in so far as the soldering resembles the use of hot adhesive, the application is somewhat the same. But neither Painter nor Wheeler was attempting to patent this idea of multiplication alone. They were patenting a method and a device in which the same idea was employed as in the Asche and Perkins patents, in the respects named; but nothing was taught by those patents which would make invention impossible by the application of these ideas in making the crown corks in such a way as to have commercial utility and advantage, where novel methods were disclosed in other steps of the process, or in the application of both new and old ideas to achieve a new result.

This leaves us, therefore, with but one patent to consider—that of Painter himself, No. 468,226, February 2, 1892—and the defendants' expert states that this patent is their principal reliance to show dis-

closures anticipating and rendering invalid the claims of the later patents.

In this early patent Painter worked out the idea of the crown cork seal, and directed the use of adhesive between the cork disk and the metallic cap with corrugated flange. He went so far as to provide for the assembling of these seals by subjecting the cork disk to heavy crushing pressure, after the shellac or adhesive substance had been well heated; and he teaches that the cork disk shall be developed into a concavo-convex form, and well confined in the cap by the melted adhesive. He plainly indicates that the momentary pressure used is to follow the heating operation, and in this respect seems to have had in mind the principles which led Wheeler to the same order of steps in improving upon the later Painter patents.

But when Painter described what he claimed as his invention he did not claim the method of construction of the crown cork seal, other than in combination with its use upon the bottle or as a *device* (claim 4) adapted to be used in that way through the interposition of an adhesive between the sealing disk and the cap, so as to secure reliable union of the cap and disk, to protect the cap and prevent tainting of the contents or their escape. He says that other applications had been made (Nos. 323,314 and 355,603) as to these disks.

The application for this earlier Painter patent was made on May 19, 1891, and it was not until June 6, 1902, that Painter attempted to claim invention in making these bottle closures in any particular or original way, to improve upon the simple or general idea of such a cap as disclosed and not claimed in the early patent of 1902, and as distinguished from the device producing the result.

On June 6, 1902, Painter applied for his first method patent of making the closures or crown cork seals, and the Patent Office, on the 30th day of September, 1902, cited the Zeidler and Asche patents, above referred to, as grounds for rejecting the two claims set forth in the application. On the 29th day of September, 1902, or one day before its rejection, Painter filed another application, in which he also claimed a method for making the bottle caps or closures substantially like the method in his application of June 6, 1902, but claimed as well an invention through the use in the metallic sealing cap of a paper collet or disk, which was, when charged with fusible medium, substituted for the "protecting film" of patent No. 468.226, or "the thin fabric reinforced" of patent No. 468,259, of which no copy has been included in the present record, but which is referred to by Painter in his application of June 6, 1902.

In the application for patent No. 792,284, known as the method patent, Painter seems to realize the failure on his part to have applied for a general patent for the crown cork style of seals, and he claims novelty for the method specified by saying that the nearest disclosure had been given in his patent No. 468,226, of 1892. But he claims this novelty through the use of the collet or paper disk, and the employment of pressure during the formation of the complete cap —that is, the cooling of the adhesive mixture—whereas in the earlier

patent the application of the plunger had been momentary, for the purpose of compressing the adhesive parts.

Painter also states in this patent that the crown corks or caps of the early patent had been, in practice, heated subsequent to the application of pressure in their manufacture, and is apparently in this allusion referring to the so-called oven method, which is described by the witness Coale as having been adopted and used by the complainant corporation for a number of years succeeding the original Painter patent No. 468,226. This oven method consisted of baking or heating the disks, after they had been assembled and subjected to momentary pressure with a plunger, in large quantities in pans in an oven, and this method of manufacture was the one from which the difficulties as to "puffers" was particularly observed.

The Patent Office finally granted the application of June 6, 1902, by letters patent No. 792,284, upon the 13th day of June, 1905, and also the application filed September 29, 1902, patent No. 792,285, under date of June 13, 1905. Meanwhile, in the year 1905, on the 24th of May, Painter applied for the machine patent, which, after renewal on the 3d of October, 1907, was issued under No. 887,838, upon the 19th of May, 1908.

The Wheeler patent was issued also upon the 19th of May, 1908, No. 887,883, upon an application filed September 20, 1905, renewed upon the 3d of October, 1907. The dates of these various letters patent are the basis of the defense of double patenting which is urged with reference to the Painter method and machine patents.

Even if valid in other respects, the defendants claim that in the so-called machine patent, No. 887,838, the method of operating shown by the Painter method patent is necessarily involved, and that the methods of the method patent will therefore be protected, if the machine patent be held valid, until 17 years after May 19, 1908, which is nearly 3 years later than the date of expiration of the method patent.

Whether this might be true of certain claims of the machine patent need not be considered; for the defendants' contention is that the entire machine patent shows only a type of the apparatus disclosed in the method patent, and that hence the machine patent is void.

This general defense cannot be sustained; for the Painter patent would teach the method of accomplishing the result. But the Painter method patent does not show the practical and convenient machine for making crown corks on a large scale, such as is illustrated by the drawings of the machine patent, and which is described in its claims. The machine patent is therefore valid as a combination, and must be treated as such; nor did the existence of the application in the Patent Office prevent application for a machine or combination patent before disclosure by the allowance of the patent. Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Badische Anilin & Soda Fabrik v. Klipstein & Co. (C. C.) 125 Fed. 543.

We therefore come to the most difficult point in the entire matter, and that is the defense of patentability or lack of invention, in view of the disclosures by the various patents of Painter himself.

Upon the motion for a preliminary injunction it was stated that claim 1 of the method patent, No. 792,284, claims 2 and 6 of the machine patent, No. 887,838, and claims 1, 4, 7, 23, and 27 of the Wheeler patent, were relied upon. The case upon final hearing is based upon these same claims, and a statement of the various claims, in order to compare them with each other, must therefore be made.

The earliest or 1892 patent, No. 468,226, claims:

"4. A metallic flanged sealing cap adapted to receive the head of a bottle and containing a concavo-convex sealing disk and an interposed film of inodorous and tasteless adhesive matter which not only secures reliable initial union of the cap and disk, but also protects the interior surface of the cap against corrosion by liquids permeating the disk, and also prevents metallic tainting of the contents of a bottle sealed by means of said cap and disk, substantially as described."

This, as has been said, does not attempt to claim as invention the use of continued pressure, following the heat, to secure the adhesive matter and the various parts while cooling or setting. Lines 97 to 128, page 4, of patent.

Patent No. 792,284, of 1905, the method patent, claims:

"1. In the manufacture of gas-tight bottle-closures composed in part of metal, the method or process which consists: First, in interposing a suitable fusible protecting and binding medium between the packing or sealing gasket and the coincident surfaces of the metal co-operating therewith; secondly, heating the metal, the gasket and the binding medium for properly fusing the latter, and in the meantime subjecting the whole to appropriate pressure; and, thirdly, cooling the metal and avoiding injury to the gasket from undue heating and hardening the fusible medium while maintaining said appropriate pressure, substantially as and for the purposes specified."

This patent assumes the use of a paper collet treated with adhesive substance, as shown by patents Nos. 468,259 and 468,226, and teaches the possibility and availability of applying time and a sudden reduction in temperature to the easily displaced and unfixed parts of the cap as previously assembled. It teaches the advantage of applying the pressure in a way to make the process of manufacturing continuous and the advantageous results in a practical way through the production of more satisfactory caps.

Patent No. 792,285, also a method patent, and issued upon the same date, has no bearing upon the particular question which we are now considering; for, being of the same date of issue and disclosing no more than No. 792,284, unless it be in elongating the raceway and providing for a complete coating of adhesive material in the cap, we need not consider the questions which might have been suggested in the Patent Office upon the two applications.

The machine patent, No. 887,838, claims:

"2. In an organization for uniting the metallic member of a bottle or like closure with its compressible packing with fusible material interposed, heating means and means for engaging the packing to hold it under compression while the closure is cooling, substantially as described."

"6. In combination, means for heating the assembled closure members and means for pressing the said members together and holding the said members under this pressure and while cooling, the said means of compression being movable to convey the closure while its members are maintained under pressure, substantially as described."

Both of these claims are attacked by the defendants because of the alleged disclosure of the method patent of approximately three years before; it being contended that the general claims are invalid, and that no specific machine is attempted to be described so as to secure a combination patent. It will be noted that the words "substantially as described" refer to the Painter machine as perfected by the complainant, or in the factory of the complainant, and as described in the drawings and specifications. This machine is specifically designated in claims 20 and 21, and consists of a disk in the form of a star wheel to carry the crowns from the feeding table beneath pressure plungers, which are in this particular machine arranged in a circle around another disk, working substantially as the defendants' machines in this suit.

It will also be noted that claim 28 of the patent describes:

"A machine for making closures for bottles and the like, comprising means for uniting the crowns with their disks and for holding them under pressure during that operation."

This claim would seem to be open to the criticism made by the defendants, that its general terms exactly fit the necessary means of the method patent, and would seem to be an attempt to patent such a broad device as the pair of pincers and ordinary lamp, which the complainant's expert testifies might be used as one means of carrying out the method patent. Such objection could not be made to the specific claims describing the machine with the star wheel and the rotating set of plungers; and a machine of that sort would seem to have involved valid invention, even taking into consideration the Asche and Perkins patents.

But claims 2 and 6 cannot be disposed of either as entirely in the class of claim 28, nor in that of claim 20. Claim 2 and claim 6, when considered in connection with the drawings of the method patent, can be read upon the structure described, and which would not have been patented as a separate device in the drawing labeled "Fig. 4" patent No. 792,284, and "Fig. 3," in the drawing of patent No. 792,285, if those patents had issued before the application or invention of the machine patent. In those drawings we have, as in claim 2, "an organization for uniting the metallic member of a bottle or like closure with its compressible packing with fusible material interposed," "means for heating," viz., the lamps, "means for engaging the packing," viz., the plungers and blocks, and "means for holding the packing under compression while the closure is cooling," viz., the continued pressure of a plunger upon the presser block while the plunger and the closure are both being moved along the raceway described, and said to be composed of two foot rails "along which can be advanced by hand or otherwise the blocks or plungers."

Also, in claim 6 we have, as stated, "in combination, means for heating the assembled closure members" (that is, the closures after the plungers have been applied), "means for pressing these members together" (that is, the plungers and presser blocks), and "for holding the members under this pressure while cooling" (also the plungers and

presser blocks), while the said means of compression are movable to convey the closure while its members are maintained under pressure, substantially as described. But before these ideas were disclosed by the issuance of the patent Painter filed the further application, in which he claimed invention for a machine made up of these same parts, or equivalents therefor.

In this machine patent Painter describes the placing of the metal caps with suitable interior binding medium upon the revolving feed table, to which a carrier brings, one at a time, the cork disk, at the point where the filled caps are taken into the circular path of the table around which the presser blocks are arranged. The heat is to be supplied after the engagement of the presser block and the plunger upon the closure containing the disk, and the specifications say:

"With some materials requiring but little heat, it will only be necessary to provide for the transit of the heated closures beyond the heater for a long enough time to enable them to be cooled by the atmosphere at normal temperature before they are released from the presser blocks. For meeting all requirements however, an artificial cooling operation is important."

The machine, therefore, as described contains additional means for artificially cooling. The defendants do not use artificial cooling, either in the form of air jets, as described by Painter, or a water-cooled chill ring, as described by Wheeler. But they do use a ring, described by the defendants' expert as a plate intended to support the thrust of the plungers, and which in effect would at first help the radiation of heat and be at the temperature of the surrounding atmosphere. As the machine is used, the heat derived from the closures, together with the proximity of the heating means, would raise the temperature of this heating ring; but the complainant's and defendants' experts both agree that the temperature of the caps while on the heating ring upon the defendants' machine is sufficient to melt sulphur—that is, 239 degrees. The temperature of the caps as they leave the plunger ring, and the temperature of the plunger ring itself, is merely uncomfortably hot, or something like 110 or 120 degrees. The use of an adhesive material solidifying at about 150 degrees shows a sufficient drop in temperature between the heating ring and the plunger ring to come within the description of both the Painter and Wheeler patents, as maintaining the closures under pressure while cooling; that is, while cooling (as Painter says in the machine patent) so as to harden the fusible medium, and also to assure a prompt contraction of the metal cap after a sudden cessation of the supply of heat before the packing is entirely cooled. In the defendants' machines both of these results are accomplished, to a sufficient extent, in their operation as shown in the testimony, so as to bring these machines within the claims of the patents in suit.

The Painter method patent does not describe a mere function of the machine shown in the machine patent, nor a mere function of the operation of heating the closure while within the grasp of a pair of pincers and held over a lamp. The defendants seem to be infringing the Painter method patent, even assuming that claims 2 and 6 of the machine patent are not sufficiently definite to be valid. But claims 2 and 6 state that the general means of performing functions are "in

an organization" and "in combination" "substantially as described," and thus the claims are made valid, if patentable novelty is shown.

But the defendants urge that the difficulty does not end here; for the Painter method and the Painter machine patent are said to be based upon a heating simultaneous with or while the closures are under pressure, and never prior to pressure. In his original patent Painter described the momentary use of a plunger upon a heated fusible medium. By the oven method he applied heat to the assembled closures after using the plunger upon the fusible heated medium. By his method patent and by his machine patent he applied pressure to the assembled closure, and then applied further heat, continuing the pressure while cooling. The defendants, on the other hand, assemble the parts of a closure which is not covered by patent at the present time, then carry the closures to a machine which applies heat to the assembled closures, free from pressure, and then applies pressure to this heated assemblage of parts.

The defendants are using almost the precise form of machine described by Painter in his drawings in the machine patent—that is, with a star wheel and series of plungers arranged around a circular disk—and they might be held for infringement of the claims of this patent, even if they cannot be held upon a charge of making closures by the patented method, to be operated on that machine. But if so, then the Wheeler patent can be only for a new combination or improvement on Painter. Further, as Wheeler used pressure only after heating, the defendants are not liable on this theory, unless they come within the provisions of the Wheeler patent. Wheeler claims:

"1. In an organization for uniting the metallic member of a bottle or like closure with its compressible packing having a fusible material interposed between it and said metallic member, means for heating the assembled members of the closures while free to allow the expanding air to escape, and means for pressing the parts together while cooling, substantially as described."

"4. In an organization for uniting the metallic member of a bottle or like closure with its compressible packing having a fusible material interposed between it and said metallic member, a plunger, a support on which the closure rests and between which and the plunger the closure is pressed, and means for heating the assembled parts of the closure for fusing the interposed material before the compression takes place, said compression taking place during the cooling of the parts and the hardening of the interposed binding material, substantially as described."

"7. In an organization of the class described, means for pressing the parts of the closures together and means for heating the closures with their interposed fusible binding material, said heating means serving to move the closures to the pressing means, substantially as described."

"23. In apparatus of the class described, a revolving series of plungers, means for previously heating and then delivering the closures thereto and means for discharging the closures from beneath the plungers at one point, substantially as described."

"27. In combination in apparatus of the class described, means for heating the closures while free from pressure, a chill plate and plunger for receiving the heated closures for cooling and uniting the parts thereof, said plunger pressing the closures between itself and the chill plate, substantially as described."

Claim 1 would seem to be valid and to be an improvement upon the Painter method and machine. Claim 4 is also valid, and describes a

similar improvement upon the Painter method.   Claim 7 provides for the moving of the closures by the heating means, and is valid in the form described, i. e., as an improvement on Painter.   Claim 23 applies the methods of claims 1 and 4 to an apparatus with the revolving series of plungers, with means—

"for previously heating and then delivering the closures thereto and means for discharging the closures from beneath the plungers at one point, substantially as described."

This claim is apparently valid, and surely removes the criticism previously noted as to the lack in the defendants' machines of any motion on the part of the oven itself, if that lack could be found.   Claim 27 adds to claim 23 the chill plate or artificially cooled ring, and this, again, would seem to be valid.

The defendants contend that their ring is not a chill ring, in the sense that it is not artificially cooled; nor does it produce a sudden chill.   But the whole scope of the patent and the statements of the specifications show that, whether artificial means of cooling is provided, or whether the chill ring is merely a metal ring to reduce temperature to a moderate degree, the use of the ring is to produce the contraction of the metal cap before release of pressure and the solidification and setting of the adhesive material to the desirable point, also before the pressure is removed.   Such use brings the ring within the definition of a "chill," although the purpose of "hardening" the metal surface by rapid reduction of temperature is not needed or intended.

The defendants have offered testimony as to a second burner, placed under the plunger ring and intended to maintain the heat of the closures at substantially the temperature at which they were before the plungers were applied.   They have even used the heat under the plunger ring, when no heat was under the oven or "star" ring.   This last experiment closely resembles the Painter method patent, and does not affect the issues of the case based upon the defendants' machines and proven commercial methods.   But if, in such a way, they can escape the provisions of the Wheeler claim 27—that is, so as to dispense with the chill ring—they would still be infringing the combination shown in claim 23, and, unless the temperature of the plunger ring were such as to prevent any cooling, would be infringing claims 1 and 7.

It must be held, therefore, that upon the entire case the defendants' devices infringe the claims mentioned of the Wheeler patent, the claims of the Painter method patent, and claims 2 and 6 of the Painter machine patent, and that the complainant is entitled to a decree.