CROWN CORK & SEAL CO. OF BALTIMORE CITY v. AMERICAN CORK SPECIALTY CO. et al. SAME v. BROOKLYN BOTTLE STOPPER CO. et al. SAME v. JOHNSON.

(Circuit Court of Appeals, Second Circuit. January 13, 1914.)

Nos. 34–36, 173, 174.

1. PATENTS (§ 328*)—INFRINGEMENT—BOTTLE CLOSURES.

The Painter patent, No. 792,284, for a method of manufacturing bottle closures, claim 1, requires the combined metal cap, cork disk, and binding medium which constitute the closure to be under pressure at least a part of the time during which heat is being applied to fuse the binder. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Painter patent, No. 887,838, for a machine for carrying out such method, also applies pressure while the binder is being fused. As so construed, both patents *held* not infringed.

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BOTTLE CLOSURES.
   The Wheeler patent, No. 887,883, for apparatus for manufacture of bottle closures, *held* valid and infringed.

3. PATENTS (§ 326*)—SUIT FOR INFRINGEMENT—PROCEEDING FOR CONTEMPT FOR VIOLATION OF INJUNCTION.
   Where, after the granting of an injunction against the use of an infringing machine, defendant's machine is reorganized, it is the better practice not to deal with the question of infringement by the new machine on motion to punish for contempt, unless the change made was merely colorable, but to leave the patentee to an application to enjoin its use.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 613–619; Dec. Dig. § 326.*]

Appeals from the District Court of the United States for the Eastern District of New York.

These causes come here upon appeal to review decrees of the District Court, Eastern District of New York, holding certain claims of three patents to be valid and infringed by defendants. The patents in question are No. 792,284, granted June 13, 1905, to complainant as assignee of William Painter, for method of manufacturing bottle closures; No. 887,838, granted May 19, 1908, to complainant as assignee of Painter for a machine for making closures for bottles; and No. 887,883, granted May 19, 1908, to complainant as assignee of W. H. Wheeler, for apparatus for the manufacture of bottle closures. These three patents relate to the manufacture of that type of bottle seal which is now widely known under the name "crown cork."

At the same time there were argued appeals from orders made in the first two causes, subsequent to interlocutory decrees, holding defendants in contempt for disobedience of the injunctions contained in such decrees.

The several opinions of Judge Chatfield, who sat in the District Court, will be found in 190 Fed. 323, 201 Fed. 344, and 206 Fed. 473. In these opinions will be found a very full statement of the facts, with excerpts from the specifications of the patent and a recital of the several claims involved, all of which need not be repeated here.

Livingston Gifford and Robert B. Killgore, both of New York City, for appellants.

James Q. Rice, of New York City, and Robert H. Parkinson, of Chicago, Ill., for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The peculiar seal for bottles containing gas-impregnated liquids, which has commended itself to the trade and has gone into general use, antedated these patents. The combination of a metal cap with corrugated flange to grip the bottle top, a cork lining or disk, and a fusible binder was covered by earlier patents and had for long been used by complainant. The validity of these earlier patents had been sustained. In producing this structure difficulties were encountered and defects in the product resulted. The patents in suit were devised to overcome these difficulties and to eliminate these defects, which difficulties and defects are fully referred to in the several specifications.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] In the first patent (792,284) claim 1 sets forth the process described and patented as follows:

"1. In the manufacture of gas-tight bottle-closures composed in part of metal, the method or process which consists, first, in interposing a suitable fusible protecting and binding medium between the packing or sealing gasket and the coincident surfaces of the metal co-operating therewith; secondly, heating the metal, the gasket, and the binding medium for properly fusing the latter, and in the meantime subjecting the whole to appropriate pressure; and thirdly, cooling the metal and avoiding injury to the gasket from undue heating and hardening the finished medium while maintaining said appropriate pressure, substantially as and for the purpose specified."

With regard to this claim two contentions are made by defendants:

A. That it must be confined to artificial cooling. The claim does not so state, nor do the specifications require such a limitation to be read into it. The text and the drawings do show air-jets for artificially cooling, but the patentee also states that:

"If the raceway was long enough (and there were no air-jets) the caps and blocks could be moved along (as others entered) and so kept under pressure until sufficient time had elapsed for the prevailing temperature of an average factory to assist in cooling of the cap and disk and hardening the fused medium. It will, however, be obvious that with the variable temperature of a room, as well as of the variations in exterior normal temperature, there would be corresponding variations in time required for perfecting the operation and also that with the long raceway suggested a large number of press-blocks would be required."

B. That the combined metal cap, cork disk, and binding medium are to be under pressure while the heat is fusing the binder. The claim expressly so states, for it says the *second* stage of the process consists of heating metal, cork and binder (for the purpose of fusing the latter) and that "meantime" the whole combination is under pressure. In the specification the patentee states that he deems it preferable to have the pressure slightly precede the heating, adding that in the second stage it is "immaterial whether or not the heating and compression be *initially* simultaneous"; this statement cannot be fairly construed as indicating that compression during the *entire* heating period (or *second* stage) is to be wholly dispensed with. It does not warrant a construction of the claim which will eliminate the word "meantime," which, it must be assumed, was put in the claim as a qualification of its terms. Nor do we find any authority for thus reconstructing the claim in the other passage in the specifications where the patentee, referring to his whole process in all its stages, describes it as "maintaining the parts under pressure while heated and until they are cooled."

Defendant's machine does not apply any pressure until *after* the combined metal, cork and binder have left the heating part of the machine and, in our opinion, does not infringe claim 1 of this patent.

### As to the Second Patent.

This also we think is limited to pressure while the binder is fusing. The specifications refer to the process patent (No. 792,284) by its application number, 110,535, and state that the machine is devised for the manufacture of closures "in harmony with my said novel method." The description indicates that the "presser blocks" put the closures un-

CROWN CORK & SEAL CO. V. AMERICAN CORK SPECIALTY CO.    653

der pressure before the heating begins and that pressure is continued until cooling ends (i. e., cooling sufficient to set the binder). At page 3 of the specifications the patentee says the heating apparatus may be widely varied and electricity, steam, or combustion used, but, "however heated," the organization of the machine "must appropriately heat the caps on the loaded presser blocks during their progressive movement," which includes their passage through the heating zone. While passing through there, they are under pressure—"the binding medium and packing (being) more or less heavily compressed because of the firm mechanical union of cap and presser block."

Since defendants do not press during heating—do not heat the caps when on loaded presser blocks—they do not infringe this patent.

## The Third or Wheeler Patent.

[2] The organization of the first two patents was directed towards securing a better and smoother union of cork and metal through the binder, by applying pressure during the fusion process. The theory was that in that way (continued pressure) a defect known as "puffing" was overcome. This did not always happen. Wheeler pointed out that pressure during heating trapped air, moisture, or gases resulting from the fusion of the binder and really prevented perfect union. He therefore departed radically from the two patents above discussed by leaving the cork unpressed during the heating period, so that air, gas, etc., could escape, and applying pressure only when the heating zone was passed. This is just what defendant's organization accomplishes, and we are satisfied that it infringes this patent.

The decrees should be reversed as to the first two patents, and affirmed as to the third patent, with a modification hereinafter noted.

[3] After entry of decrees and issuance of injunction, defendants reorganized their machines, making the following change: In all the preceding patents, and generally in the prior art, the caps, corks, and binder were assembled before the heating and fusing process began. As reorganized only the caps and binder are thus assembled. These are heated and the binder fused, and *after* the cap, with fused binder, has passed the heating zone, the cork is driven down into it and held under pressure.

Complainant moved to attach for contempt because of the use of this reorganized machine. It has been the practice in this circuit (Bonsak Machine Co. v. National Cigarette Co. [C. C.] 64 Fed. 858) not to deal with modifications of a machine held to be an infringement, on motions to punish for contempt, unless the change was plainly a mere colorable equivalent; if the change was substantial, fairly arguable as to its being covered by the patent, it has been the practice to leave the patentee to an application to enjoin its use. That practice is a wholesome one, because an injunction covering the new machine is appealable at once, and can be promptly considered by the Circuit Court of Appeals. But there is no such summary appeal from an order holding a party in contempt, and in view of recent decisions of the Supreme Court it is not certain that the convenient practice, formerly followed

in this circuit, of reviewing such order by writ of error, is still available.

Complainant moves to dismiss these two appeals from the contempt orders. We do not find it necessary to decide this point now. We are satisfied that the District Judge should have left the question whether the changed device infringes to be settled upon an application for injunction, presumably in a new suit. To accomplish this result the decrees should be amended by inserting a clause which describes the infringing machines covered by said decrees as machines in which the combination of metal, cork, and binder is assembled before the processes of heating, fusing, pressing, and cooling begin.

Whether or not the patents are broad enough also to cover a machine operating as does the one now used by defendant may be determined in another suit which raises that question. This disposition of the main appeal makes it unnecessary to grant special relief under the contempt orders, the appeals from which are pro forma dismissed.

No costs to either side of this appeal.