NEVA-SLIP SHIRT WAIST GRIP CO., Inc., v. MARCON MFG. CO., Inc.

(District Court, E. D. New York. June 22, 1914.)

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—WAIST GRIP.

The Crawford patent, No. 1,065,297, for a waist grip, was not anticipated, but is limited to the particular arrangement of parts shown, and as so limited held not infringed.

2. PATENTS (§ 167*)—CONSTRUCTION—LIMITATION BY SPECIFIC CLAIMS.

To give a broad meaning to the specification of a patent, it must be evident that the inventor had in mind the invention which would be described by the broad interpretation. If the contrary is apparent, and it

appears that he did not appreciate what might be covered by a different claim or by a forced construction of the claims, he is not entitled to a patent therefor.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

In Equity. Suit by the Neva-Slip Shirt Waist Grip Company, Incorporated, against the Marcon Manufacturing Company, Incorporated. On final hearing. Decree for defendant.

William B. Whitney, of New York City, and Leopold Blumberg, of Brooklyn, N. Y., for plaintiff.

Stephen J. Cox, of New York City, for defendant.

CHATFIELD, District Judge. Letters patent No. 1,065,297 were issued upon June 17, 1913, on an application filed July 9, 1912, by Guy H. Crawford, duly assigned to the Neva-Slip Shirt Waist Grip Co., Incorporated, for what is called a waist grip.

Suit was brought for infringement of this patent, and at the close of the trial the following findings were made:

"Brooklyn, March 10, 1914.

"The Court: I think I will make a preliminary decision so as to narrow the ground for argument. As I indicated at the outset, the Marcon Manufacturing Company, Inc., was never organized sufficiently to do business in such a way that Mr. Connell could successfully separate his own actions from those that were done by him in the name of the corporation. We need not consider at all the financial responsibility of any one, either as stockholder or as subscriber for what was done, but, assuming that the use of the corporate name was something for which Mr. Connell and Mr. Geary were personally responsible, rather than as officers of the corporation, and also assuming that they had filed a certificate under which they could do business as individuals in the name of the Marcon Manufacturing Company, throughout this entire period, nevertheless, the responsibility was such that if Mr. Geary or Mr. Connell, or either of them, dealt with any one in the name of the corporation, and if the corporation was held out as a party qualified to do business, there is ground for charging the corporation (in so far as it existed) with infringement, if there be any infringement.

"There is jurisdiction therefore for considering the validity of the patent and the defenses urged against the patent with respect to the defendant, Marcon Manufacturing Company, as a corporation. It is unnecessary to consider whether the plaintiff could join Mr. Geary and Mr. Connell as individual defendants upon the record here presented; and it is also unnecessary to determine whether—if Mr. Geary and Mr. Connell could show successfully that any act in the name of the Marcon Manufacturing Company, Inc., was accidental or incidental—the present action should be dismissed without costs, and an action against the individuals substituted in its place. All those questions have been removed by the way in which the case has been presented by both parties, and through the fact that the corporation is nominally associated with the acts, charged to be infringing, to a sufficient extent to enable us to take up the questions of patentability and infringement.

"As to those questions the principal issue is raised through the use of the Rival fastener, and with respect to the construction of the claims of the patent in suit.

"The defendant's form of device and the form used by Mr. Geary at present would both be infringements if the patent to Crawford is valid, and covers the use of a single tape passing through an eyelet attached to one end of the tape, and carried back for fastening around a cleat of such form as to bring the pressure of one part of the tape, or of the cleat, over the loose end.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"The prior art patents relating to skirt supporters, or belts, or methods of fastening, have little to do with the question, except in so far as they show ability to hold a loose strap or end of tape by friction applied through some other portion of the tape; and the idea of fastening a loose end by means of a cleat, either by pressure of the other strands or by binding through the angle of the return, is old.

"The only element of patentability would seem to be in the employment of a cleat upon the single strand, or in using a cleat in connection with a single piece of tubular tape, so arranged as to hold the cleat, to furnish the reinforcement and to give an end for the fastening, in a way which, tested by either the prior art or the Rival style of belt, would seem to show patentable improvement.

"The Rival fastener shows a reinforced or duplicated section with an eyelet at each end, and with these eyelets fastened by riveting a strap or gusset through the eyelet and into the main portion of the belt.

"It would not seem to be an invention to substitute an extended or integral portion of the tape through the eyelet so as to do away with the extra piece in making the gusset; and therefore the question of novelty or patentability in the plaintiff's device depends upon the arrangement with reference to the method of applying and fastening the belt, rather than to the method of attaching the eyelets, or affixing the rivets.

"The defendant's device, as well as that now in use, makes no use of the folded or turned back part of the tubular tape, so as to hold the so-called cleat in one position; but does use the same method of fastening the loose end of the belt, by means of the cleat, and uses, as has been said, an equivalent (or method in which no novelty is involved) in attaching the eyelet.

"The claims of the patent, however, seem to relate to a method, or a device constructed according to a method of arranging a single piece of tape, so as to hold the cleat in a fixed position, and to make the different parts of the device with one piece of tape.

"If that be the proper interpretation and construction of the claims, and if the patentee has either assumed that the use of the cleat itself is old or has given to the world the idea of using the cleat in this way, for this purpose, then the patent in suit, like the Rival belt, would not cover what would seem to be a patentable idea, but has merely protected a particular combination, which is not that of the defendant.

"I think that is the question in the case: Whether the patent means anything more than a particular arrangement of what was patentable but not patented. If the patent claims cover only one combination of parts so arranged that the tape shall be doubled on itself, that the same tape shall come back through the eyelet and shall be fastened around the cleat which is to be held in one spot by a loop of the tape itself, then the defendant is not infringing.

"I will take briefs on the question of meaning and construction of the claims."

[1] The court, having considered the prior art, reached the conclusion that none of the patents cited showed a device like that of the plaintiff or the defendant in this case, and it was apparent that a patentable novelty was described in the Crawford patent, unless the so-called Rival belt, which had been developed from the Koch and other older devices, was an anticipation of the idea, except as limited to the exact combination shown in the claims.

The testimony shows that the Rival belt has been upon the market for some time and is not patented. It, in general, consists of a belt or tape, with a ring at each end, and with two strings or tapes fastened to one of these rings, by means of which the two rings are drawn together and a knot tied, in the general method of the Koch patent, No. 644,557 of February 27, 1900.

In the Koch patent, however, one of the two ends is attached to each of the rings at the ends of the belt. In the Crawford patent, and in the design used by the defendant, the fact that an end of the string or tape is passed through the ring in the opposite end of the belt, and that the belt is tightened by pulling upon this end, is similar to the idea in the Rival and the Koch belts; but the method of fastening, and the arrangement of the parts so as to allow of this method of fastening, is entirely different and is unlike anything in the patents cited.

Of these, the patent to Dwyer, No. 886,780, May 5, 1908, is merely an application of the old idea of the so-called Mexican or cinch fastening for a saddle girth, and only resembles the patent in suit from the fact that the belt, as in the Koch and Rival patents, is drawn tight by pulling of the strap through the ring.

Hellenberg, patent No. 429,910, June 10, 1890, uses the same idea of drawing a strap through a ring to tighten upon a hook or buckle, and this idea is shown in the patent to Reznicek, No. 1,021,728, March 26, 1912, and Scheuer, No. 656,666, August 28, 1900, while in Kimsey, No. 636,149, October 31, 1899, Mullee, No. 7,879, September 11, 1877, and Edwards, No. 730,751, June 9, 1903, a method of forming some support for the skirt is the basis of the patent and takes the device entirely out of the category of the one in suit.

In none of these patents is there anything shown that resembles in an anticipatory way the Crawford belt and the Marcon belt as nearly as does the Rival, and, as has been said, the Rival belt resembles a simplified cinch strap fastening, but is in this respect alone like the Crawford and Marcon device.

As was said in the preliminary finding, the question of infringement has raised the meaning of the claims and the scope of the patented idea. The testimony shows that the defendant had knowledge of the plaintiff's device and, before this suit was started, had knowledge of the plaintiff's patent. Certain changes in the defendant's device were made so as to avoid the actual appearance of copying the plaintiff's patented article, and by this change two lengths of tubular braid were put together by drawing one inside of the other, instead of folding back a continuous piece of braid upon itself in order to make the reinforced portion.

There could be no invention in doubling back a single piece of tape, if precisely the same function were performed by the doubled part as would be performed by a tape of twice the thickness, or by two pieces of tape fastened together.

As was indicated in the preliminary opinion, a combination of parts to form the two-fold belt, gussets, rings, and ends for fastening, is intended to accomplish exactly the same result as would be performed by a combination of similar parts, either of more expensive material, or so arranged as to involve greater expense in the handling and manufacture. But so far as the idea patented was concerned, the novelty seems to have been in so combining the different parts that might be employed (or the equivalent in use and function of the parts described in the patent) as to present a new way of making a belt or a new way of performing the functions of the old style of belt, with some addition-

al functions added by one or more of the elements of the patented combination.

In the Rival belt, each of the rings was definitely fixed at one of the ends of the belt proper. The Crawford patent substituted a fastener (that is, a cleat or buckle or a ring, but preferably a cleat, which would require a mere twisting of the end to complete the fastening) in such a position that it would be available in the place of that ring of the Rival fastener which was attached at the same end from which the two single tapes projected.

If Crawford had attempted to patent a device in which the use or position of this cleat was the novel feature, through locating the fastener at any desired point, and then holding it in place as well as clamping the end of the tape by the friction presented when the fastener was in use, and had also set forth in another claim a particular combination of those parts, in which that frictional fastener should be restrained and located at a definite fixed place, by the use of additional elements in the combination, it would seem that the claims of his patent, if allowed, would include the defendant's style of device. But the file wrapper and the patent itself indicate that Crawford, in his original application, attempted to claim merely the general idea of a combination consisting of a folded or duplicated tape, attached at one end to a ring and at the other to a fastener, with a single piece of tape extending therefrom, and to make the preferred form of device with one piece of tape, by manipulation, without cutting, instead of by putting the several pieces together as in the Rival belt, or by constructing it in the form of the Koch patent, supra.

There was plainly no invention in this idea, and Crawford thereupon proceeded to develop his claims in the direction of attaching his fastener by a different method and at a different point, but in such a way that the method of attachment (i. e., the arrangement of parts so as to hold the fastener in the desired place) and the place of attachment (i. e., at some other point than at the precise end of the doubled portion of the belt) were the novel features of his device as stated in his claims.

The other claims of the patent are not relied upon and definitely describe the fixing of the cleat fastener in a permanent position by attached parts of the belt, while claim 4, although at first relied upon, is now admitted to describe only a different form of the same arrangement. The plaintiff relies upon claim 1, which is as follows:

"1. A waist grip made of a tubular piece of tape folded on itself for a portion of its length, whereby a reinforced portion is provided, the end of the tape beyond the reinforced portion having a fastener secured thereto, the folded end of the reinforced portion being provided with a ring, the said piece of tape beyond the reinforced portion being adapted to be entered into the ring and brought into engagement with the said fastener, whereby it is held in position for use."

If the words "secured thereto" could be construed to mean simply "movable thereon," claim 1 would be general enough to secure to the plaintiff the rights which, looking at the matter at the present time, it would seem might have been claimed by him as invention. But, as a matter of fact, he apparently did not appreciate nor understand nor conceive the whole invention. He had the idea of substituting a cleat

for a ring or other fastener, but the mere use of a cleat was not patentable, and he failed to see the possibility of novelty in so applying the cleat as to get the full use and benefit of its qualities as a fastener.

The drawings and specifications plainly show that he was limiting his invention to the precise form in which the cleat was to be held in position by an additional fold of the tape and to be thus prevented from being movable upon the end of the belt.

[2] Under the decision of the Circuit Court of Appeals in the case of Crown Cork & Seal Co. v. American Cork Specialty Co., 211 Fed. 650, 652, 128 C. C. A. 154, an express statement in a claim, which is in accord with the specifications and drawings, cannot be construed to mean something different, nor can it be reconstructed so as to eliminate the limitations indicated in the specifications and drawings and shown by the literal meaning of the claim. In other words, to give a broad meaning to a specification, it must be evident that the inventor had in mind the invention which would be described by the broad or liberal interpretation. If the contrary is apparent, and it appears that the inventor did not appreciate what might be covered by a different claim or by a forced construction of the claims, then he is not entitled to a patent therefor.

The device of the defendant consists of such parts of the old Rival belt as are shown to be necessary from the teachings of the Crawford patent, but with a movable cleat in the place of a ring. This device is not shown nor described by the Crawford patent, and the defendant has not attempted to obtain a patent therefor.

The defendant may have a decree.