CROWN CORK & SEAL CO. OF BALTIMORE CITY v. BOND BOTTLE
SEALING CO.

(District Court, D. Delaware. October 21, 1914.)

No. 319.

*(Syllabus by the Court.)*

PATENTS (§ 328*)—INFRINGEMENT—APPARATUS FOR THE MANUFACTURE OF BOT-
TLE CLOSURES.

The Wheeler patent, No. 887,883, for apparatus for the manufacture of
bottle closures, is restricted to apparatus under the operation of which
the three elements entering into and composing the bottle closure, namely,
the metal cap, the fusible material or binding medium, and the cork disk
or packing, are all assembled and contemporaneously heated in their as-
sembled condition before being subjected to pressure; pressure being ap-
plied to the closure only while cooling. Defendant's apparatus does not
disclose means for heating the three members of an assembled closure
before the same are subjected to pressure and cooling as contemplated
and required by the patent, and therefore does not infringe.

In Equity. Suit by the Crown Cork & Seal Company of Baltimore
City against the Bond Bottle Sealing Company. On final hearing. De-
cree for defendant.

James Q. Rice, of New York City, and Howell S. England, of Wil-
mington, Del., for complainant.

Melville Church, of Washington, D. C., Marshall A. Christy, of
Pittsburgh, Pa., and Ward, Gray & Neary, of Wilmington, Del., for
defendant.

BRADFORD, District Judge. The bill in this case was brought by
the Crown Cork and Seal Company of Baltimore City, a corporation
of Maryland, against the Bond Bottle Sealing Company, a corporation
of Delaware, for alleged infringement of letters patent of the United
States No. 792,284, granted June 13, 1905, to the complainant as as-
signee of William Painter, for Method or Process of Manufacturing
Bottle Closures; No. 887,838, granted May 19, 1908, to the complain-
ant as assignee of William Painter, for Machine for Making Closures
for Bottles and the Like; and No. 887,883, granted May 19, 1908, to
the complainant as assignee of William H. Wheeler, for Apparatus
for the Manufacture of Bottle Closures. The charge of infringement
has been abandoned with respect to the two patents first above men-
tioned, and with respect to patent No. 887,883 has been restricted to
claims 1, 4, 6, 7, 23, 24, 25, 26 and 27, which are as follows:

"1. In an organization for uniting the metallic member of a bottle or like
closure with its compressible packing having a fusible material interposed be-
tween it and said metallic member, means for heating the assembled mem-
bers of the closure while free to allow the expanding air to escape, and means
for pressing the parts together while cooling, substantially as described."

"4. In an organization for uniting the metallic member of a bottle or like
closure with its compressible packing having a fusible material interposed be-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tween it and said metallic member, a plunger, a support on which the closure rests and between which and the plunger the closure is pressed, and means for heating the assembled parts of the closure for fusing the interposed material before the compression takes place, said compression taking place during the cooling of the parts and the hardening of the interposed binding material, substantially as described."

"6. In an organization for uniting the metallic members of a bottle or like closure with its compressible packing having a fusible material interposed between it and said metallic member, means for supporting the closure in inverted position, means engaging the packing and the cap or metallic member to press them towards each other, means for cooling the closure while subjected to pressure, and means for applying heat to fuse the said interposed binding material before the inverted closure is subjected to pressure and while it is free to allow the escape of the expanding air, substantially as described.

"7. In an organization of the class described, means for pressing the parts of the closures together and means for heating the closures with their interposed fusible binding material, said heating means serving to move the closures to the pressing means, substantially as described."

"23. In apparatus of the class described, a revolving series of plungers, means for previously heating and then delivering the closures thereto, and means for discharging the closures from beneath the plungers at one point, substantially as described.

"24. In apparatus of the class described, a revolving series of plungers, means for previously heating and then delivering the closures thereto and means for discharging the closures from beneath the plungers at one point, said means consisting of the incline in the path of movement of the closures, substantially as described.

"25. In combination in apparatus of the class described, means for heating the closures while free from pressure, chilling and pressing means, and means whereby the closures are delivered from the heating means to the chilling and pressing means, substantially as described.

"26. In combination in apparatus of the class described, means for heating the closures while free from pressure, chilling and pressing means for receiving the heated closures from the heating means, said pressing means acting to press the parts of the closure together between itself and the chilling means, substantially as described.

"27. In combination in apparatus of the class described, means for heating the closures while free from pressure, a chill plate and plunger for receiving the heated closures for cooling and uniting the parts thereof, said plunger pressing the closures between itself and the chill plate, substantially as described."

The validity of the patent in suit is not disputed, and I do not think it can successfully be assailed. The controlling question is whether on a proper reading of the claims there has been infringement. In view of the largely functional mode of expression employed in the several claims it is necessary, in order to gain an intelligent conception of the nature and structure of the apparatus therein referred to, to resort to the patent description in which it is the duty of the inventor truly to describe his invention and to which express reference is made in each claim. Wheeler in the description says:

"My invention relates to the manufacture of bottle closures of the class known as crown cork sealing caps or closures, and it concerns particularly a machine for uniting the compressible or resilient packing material to the metallic cap. In carrying out my invention I employ heat to soften or fuse the protecting and binding medium located between the packing or sealing gasket and the metal cap and after the parts are thoroughly heated they are allowed to cool or subjected to artificial cooling, and during this time they are

subjected to pressure so as to firmly unite the packing or gasket to the cap by the binding and protecting medium. During the heating action of the parts they are not subjected to pressure or to any action which would tend to confine any moisture or air which may be in the material or in the pit holes or crevices thereof or pocketed between the members of the closure, but on the contrary, the assembled parts are left entirely free for the escape of any moisture or for the escape of the air in expanding.  *  *  *  I aim among other things to provide a construction for the uniting of the assembled members of the closure which may be added to existing forms of assembling machines, occupying no more floor space than is necessary to accommodate the existing form of machine. I have sought also to provide a compact arrangement, but at the same time one in which the heating action on the members of any one closure may be continued a sufficiently long time to thoroughly soften the binding material and to drive out any moisture or air in the material or between the members which might interfere with the firm uniting of the parts. The invention consists in the features, combination and arrangement of parts hereinafter described and particularly pointed out in the claims.  *  *  *  My present improvement contemplates uniting the metallic cap with its compressible contents or packing by fusing the interposed material, such for instance as the collet described, and subjecting the parts to pressure while cooling and while the binding or sealing material is hardening. It is thought to be unnecessary to describe the assembling mechanism and the die mechanism as these parts are fully disclosed in the patent referred to. [No. 798,549.]  *  *  *  From the above it will be seen that the assembled parts of the closure are subjected to heat while in the condition in which they leave the dies of the assembling machine. In this condition the packing while frictionally held by the walls of the cap, is free from pressure or from contact with any device which might act to prevent the escape of the air or moisture from the crevices or from the body of the material itself within the cap. It is desirable to allow the air and moisture, if there be any, to escape freely before the parts are subjected to pressure, for if the pressure takes place before or simultaneously with the heating, any air contained in the pit holes or crevices of the packing or between the members of the closure or any moisture present on or about the members, may, by expanding, tend to separate the parts and prevent them from uniting perfectly under continued pressure."

The invention covered by the patent in suit is not a process, but mechanism or apparatus specifically pointed out and described. Wheeler states that "the invention consists in the features, combination and arrangement of parts hereinafter described and particularly pointed out in the claims." The rule that the inventor of a process need only describe an approved means for its practice and is not restricted in the enjoyment of the patent monopoly to the particular means described, is inapplicable to machine or apparatus patents. In the former case what is patented is the process and not any instrumentality for conducting it; but in the latter it is the machine or apparatus itself as described and claimed. The doctrine of equivalents has more or less liberal or restricted application according to the nature and scope of the invention, excepting in so far as the inventor has by his claims read in connection with the description and drawings excluded the application of that doctrine. Unless form has been made essential by the inventor, no merely formal change from the patented device or mechanism will avoid infringement. It was wholly unnecessary for the protection of his patent monopoly that Wheeler should declare that he did not limit himself to the "precise form of the elements" of the patented combination, or that the fundamental principle under-

lying them might be embodied in apparatus "of different form from that disclosed" without departing from the scope of his invention, or that the "assembling mechanism" might be in any desired form. While it is true that Wheeler, from abundant caution, though unnecessarily, thus declared, in substance, that infringement could not be avoided by purely formal changes in the elements of the combination, it is equally true that by the plain and unmistakable import of the language of the description and of the claims as well as by the structure of the apparatus disclosed, of which he said his "invention consists in the features, combination and arrangement of parts hereinafter described and particularly pointed out in the claims," he is limited to apparatus under the operation of which the three elements entering into and composing the bottle closure, namely, the metal cap, the fusible material or binding medium, and the cork disc or packing, are all assembled and contemporaneously heated in their assembled condition before being subjected to pressure; pressure being applied to the closure only while cooling. Wheeler states that heat is employed "to soften or fuse the protecting and binding medium located between the packing or sealing gasket and the metal cap and after the parts are thoroughly heated they are allowed to cool or subjected to artificial cooling, and during this time they are subjected to pressure so as to firmly unite the packing or gasket to the cap by the binding and protecting medium"; that "during the heating action of the parts they are not subjected to pressure * * * but, on the contrary, the assembled parts are left entirely free for the escape of any moisture," etc.; that he aims "to provide a construction for the uniting of the assembled members of the closure," etc.; that his present improvement "contemplates uniting the metallic cap with its compressible contents or packing by fusing the interposed material * * * and subjecting the parts to pressure while cooling and while the binding or sealing material is hardening"; that it is "unnecessary to describe the assembling mechanism and the die mechanism as these parts are fully disclosed" in patent No. 798,549; that "after leaving the die mechanism the composite closure is discharged into a chute 1, Fig. 1, which directs the closure onto a heating table or steam plate 2"; that "the closures are subjected to heat from the heating table which being transmitted through the metal of the cap, directly in contact with the heating table, causes the binding and protecting material which is interposed between the compressible packing of cork or other material and the cap to be fused for the purpose of uniting the compressible packing with the cap and for other purposes," as set forth in patent No. 792,-284; that "the closures as they traverse the heating table are free, not being subjected to pressure, and they follow each other through the grooves 4 closely, and during this time they are subjected to the heat from the heating table for which the spiral plate acts as a cover and serves to form, in connection with the surface of the heating table, a chamber in which the closures are subjected to the heat while free from pressure"; that "in the revolution of the steaming table, chill ring and plunger-carrying ring the plungers are raised just before they

reach the point at which the closures are discharged from the spiral and from the heating table onto the chill ring, and this permits the proper positioning of the closure beneath the elevated plunger, and when this has taken place the roller of the elevated plunger runs off from the stationary cam *19*, thus allowing the plunger to fall and engage the packing, placing the same together with the other parts of the closure under compression, and in this condition, and while in contact with the chill ring, the closure makes very nearly a full revolution about the axis of the machine," etc.; that "the assembled parts of the closure are subjected to heat while in the condition in which they leave the dies of the assembling machine"; that in this condition the packing "is free from pressure"; that "if the pressure takes place before or simultaneously with the heating, any air contained in the pit holes or crevices of the packing or between the members of the closure or any moisture present on or about the members, may, by expanding, tend to separate the parts and prevent them from uniting perfectly under continued pressure"; and that "by reason of the spiral course over which the closures are made to pass, the heat continues to act on the closures for a long time so as to thoroughly soften the interposed binding material and prepare the parts for the cooling and pressing action." Not only are the claims touching which infringement is urged, as, indeed, are all of the claims of the patent in suit, in perfect harmony with the description and drawings of the patented apparatus, but on their face and by reference to the apparatus as described require the three parts or elements of the bottle closure to be heated in their assembled condition before cooling and subjection to pressure. Claim 1 requires "means for heating the assembled members of the closures while free to allow the expanded air to escape, and means for pressing the parts together while cooling, substantially as described." It is too plain for argument from this language in connection with the description and drawings that the assembled members of the closures are the parts which are to be "pressed together," and include all the three elements entering into the composition of the closures. The suggestion that the word "assembled" is only a descriptive term, and not indicative of the physical relationship between the different members or parts of the closure during the process of heating and subsequent cooling, respectively, is too strained and unreasonable, I think, to have any force. Claim 4 requires "means for heating the assembled parts of the closure for fusing the interposed material before the compression takes place, said compression taking place during the cooling of the parts, and the hardening of the interposed binding material, substantially as described." Considerations similar to those applicable to claim 1 apply here. Claim 6 requires "means for supporting the closure in inverted position, means engaging the packing and the cap or metallic member to press them towards each other, means for cooling the closure while subjected to pressure, and means for applying heat to fuse the said interposed binding material before the inverted closure is subjected to pressure and while it is free to allow the escape of the expanding air, substan-

tially as described." The closure includes the three elements or parts entering into it and as all of them are subjected to pressure and cooling, so all of them in their assembled condition are first subjected to heat. Claim 7 requires "means for pressing the parts of the closures together and means for heating the closures with their interposed fusible binding material, said heating means serving to move the closures to the pressing means, substantially as described." The language of this claim in connection with the patent description and drawings clearly requires that, as in the case of the claims already considered, the three parts or elements of and constituting the closure shall be heated, pressed and cooled respectively in their assembled condition. Claims 23 and 24 require a "revolving series of plungers, means for previously heating and then delivering the closures thereto," etc. Claims 25 and 26 require "means for heating the closures while free from pressure, chilling and pressing means," etc. Claim 27 requires "means for heating the closures while free from pressure, a chill plate and plunger for receiving the heated closures for cooling and uniting the parts thereof," etc. Each and every of these five claims requires that all the parts of the closure in their assembled condition shall be heated before being delivered to or received by the chilling and pressing means, and that they should be sufficiently heated to allow their firm and perfect union, under subsequent pressure and cooling, before any pressure or cooling should be applied. The closures are to be delivered from the heating means, not to other heating means, but to the pressing and chilling means. Any incidental heat that may be delivered to the cork disc by reason of its being brought into contact with the interposed fusible material under the impact or pressure of the plunger without substantial previous heating cannot satisfy either the language or the purpose of the patentee. Wheeler states in the description that "by reason of the spiral course over which the closures are made to pass, the heat continues to act on the closures for a long time so as to thoroughly soften the interposed binding material and prepare the parts for the cooling and pressing action." He does not, it will be perceived, confine his attention to the softening of the interposed binding material, but also regards the preparation of the parts, including the cork disc as well as the cap and interposed binding material, "for the cooling and pressing action." He further states that "if the pressure takes place before or simultaneously with the heating, any air contained in the pit holes or crevices of the packing or between the members of the closure or any moisture present on or about the members, may, by expanding, tend to separate the parts and prevent them from uniting perfectly under continued pressure."

The invention of the patent in suit is apparatus or mechanism designed, constructed and adapted for the assembling and uniting of the three parts of a bottle closure by a method essentially different from that disclosed in the earlier patents. In Crown Cork & Seal Co. v. American Cork Specialty Co., 211 Fed. 650, 128 C. C. A. 154, the circuit court of appeals for the second circuit had under consideration an appeal from the district court where it had been held [201 Fed.

344] that the use of the defendants' machine was an infringement of the patent here in suit and also of patents Nos. 792,284 and 887,838, granted to the complainant here as assignee of William Painter, June 13, 1905, and May 19, 1908, respectively. The appellate court distinguished the invention of the patent now in suit from those of the two earlier patents and, while affirming the decree below as to the Wheeler patent, reversed it as to the two Painter patents, holding that "the organization of the first two patents was directed towards securing a better and smoother union of cork and metal through the binder, by applying pressure during the fusion process," and saying:

"Wheeler pointed out that pressure during heating trapped air, moisture, or gases, resulting from the fusion of the binder and really prevented perfect union. He therefore departed radically from the two patents above discussed by leaving the cork unpressed during the heating period, so that the air, gas, etc., could escape, and applying pressure only when the heating zone was passed."

The two Painter patents referred to require all the parts of the closure in their assembled condition to be under pressure and while so under pressure to be heated. In the description of the method or process patent No. 792,284 Painter says:

"Broadly stated, my novel method or process consists, first, in interposing a suitable fusible protecting and binding medium between the packing or sealing disks or gaskets and the coincident inner surfaces of the metal cooperating therewith and of which the crown-caps are composed; secondly, while the caps and disks, and fusible binding medium are properly heated for fusing said medium, subjecting the whole to appropriate pressure, and, thirdly, while still heated and the packing held under controlling pressure hardening the binding medium or permitting it to harden by cooling it, the disk, and cap."

All the claims of that patent strictly conform to the method or process as above described. In the description of the machine patent No. 887,838 Painter says:

"In certain applications for patent filed by me June 6, 1902 (Serial No. 110,535), and September 29, 1902 (Serial No. 125,180), I disclosed certain novel methods or processes of manufacturing bottle closures, wherein a special feature involves the interposition of a suitable fusible protecting and binding medium between a suitable metallic cap and a suitable sealing gasket or packing; then properly heating the cap, gasket and said medium, and meantime subjecting the whole to appropriate pressure, and while still under such pressure, cooling the completed closure."

"Serial No. 110,535" refers to the application for the Painter patent No. 792,284. The claims of patent No. 887,838 conform to the mechanism disclosed in the patent description and drawings and require, as stated in claim 10, "means for pressing together the members of a bottle or like closure, means for first subjecting said members to heat while maintained under pressure and then to cooling influences while maintained under pressure." In Crown Cork & Seal Co. v. American Cork Specialty Co., supra, the defendants did not apply any pressure until after the combined metal, cork and binder left the heating part of the machine—did not "press during heating"—left "the

cork unpressed during the heating period"—and was consequently held by the circuit court of appeals not to infringe either of the two Painter patents above referred to; the court deciding that under those patents the combined metal cap, cork disc and binding medium must be under "pressure while the heat is fusing the binder." An essential feature of the apparatus of the Wheeler patent is means for the adequate and complete heating of all the members of the closure, as assembled, before the subjection of the cork disc to pressure. This feature differentiates the patent in suit from the Painter patents Nos. 792,284 and 887,838, which contemplated and required the heating under pressure of all the parts of the closure as assembled and then the cooling of the same also under pressure. The same feature differentiates the defendant's apparatus from that of the complainant. The counsel for the defendant have well described the operation of the defendant's apparatus, the construction of which it has been stipulated is substantially represented by the drawing Plaintiff's Exhibit No. 3, "Bond Machine," as follows:

"In the operation of the machine, the empty metal shells which rest upside down on the table $A$, are pushed by an operative upon a continuously rotating dial $B$, which moves in the direction shown by the arrow. This dial carries the metal shells around in line through the raceway $C$, and there they are delivered one by one to the successive pockets of the continuously rotating dial $D$. The shells are brought by the dial $D$ in succession underneath a device indicated at $E$ for placing the fusible adhesive substance within the shell. The paper impregnated with the adhesive substance is fed in a strip in a line, as indicated on the drawing, passing underneath the device $E$, which acts to punch successive disks or collets from the strip and to deposit them one after the other in successive shells as they pass beneath. Each shell, with the collet of fusible adhesive substance in place in it, is carried on around by the dial $D$, in the direction shown by the arrow, until it strikes the inclined abutment $F$, by which it is shunted into one of the pockets of the continuously rotating dial $G$, each successive shell containing its adhesive substance thus passing from one dial to the other. The shells on the dial $G$ are carried in succession under a device for heating the adhesive substance, so as to soften it. This heating device, marked $H$, is simply a blowpipe burner having three downward jets, which are narrow, like a lead pencil, and by means of which heat is applied to the adhesive substance, each shell being thus exposed to the flames of the burner for the fraction of a second in its passage beneath them. As the shells with their contained adhesive substance pass in succession from underneath the burners, they are again deflected by the angular shunting abutment $I$, into pockets provided for them in the continuously rotating dial $K$, where they receive the cork disks. The cork disks are arranged one on top of the other, in an upright tube shown at the point $L$. From the bottom of this tube they pass one at a time to pockets in the surface of a small continuously rotating carrier $M$, by means of which they are brought in succession to a point immediately over the path of the metal shells on the dial $K$. A series of plungers $P$ are provided, one arranged above each of the pockets in the dial $K$, and this series of plungers rotates with the dial at the same speed. A cam track $R$ is provided for the heads of the plungers, and serves to hold the plungers elevated for a portion of their travel. This cam track $R$ ends abruptly at the point $S$, where a cork disk and a metal shell beneath come for an instant into alignment. Thus as the head of a plunger runs off this abrupt termination of the cam track, the plunger is snapped down by a spring, causing it to instantaneously push the cork disk into the metal shell upon the previously softened adhesive substance, and the plunger remains in its depressed position until plunger and shell reach the inclined starting point of the cam track, somewhat less than

half a revolution beyond the point $S$, where the plunger rides up on the cam track, releasing the now finished closure, and the latter is shifted off the dial $K$ by means of the inclined abutment $O$."

The defendant's apparatus does not disclose means for heating the three members of an assembled closure, before the same are subjected to pressure, as contemplated and required by the patent in suit. On the contrary, the cork disc, which is fed from an unheated upright tube beyond the heating zone and only after the cap and the fusible binding or adhesive medium have been heated from their passage through that zone, is not heated until the plunger at a point considerably removed from the heating zone and after the cooling period has commenced, presses it down upon the binding or adhesive medium, still remaining sufficiently heated to be operatively adhesive, producing a condition of things not only inconsistent with the claims and description of the patent in suit, but distinctly condemned by Wheeler who particularly points out the injury that may result "if the pressure takes place before or simultaneously with the heating"—the cork disc in the defendant's apparatus, as already stated, in substance, not being subjected to pressure or heat until the instant it is brought by the plunger into contact with the heated adhesive medium. The difference in mechanism and operation between the apparatus of the defendant and that of the complainant is accentuated by the means respectively employed by them in the application of heat in connection with the preparation of closures. In the description of the Wheeler patent it is said:

"Further, it will be observed that as a heating medium, I use steam and this is applied to the table over whose imperforate surface the crowns pass. There is no direct contact of the heating medium with the crowns and no damage results thereto. * * * The heating table occupies the space within the standards or supporting legs of the apparatus and by reason of the spiral course over which the closures are made to pass, the heat continues to act on the closures for a long time, so as to thoroughly soften the interposed binding material and prepare the parts for the cooling and pressing action."

On the other hand, in the defendant's apparatus the heat is applied before the insertion of the cork disc into the cap and by means of three downward jets of a blowpipe burner "to the adhesive substance, each shell being thus exposed to the flames of the burner," etc. Indeed, the operation of the defendant's apparatus, aside from subsequent cooling under pressure, more nearly resembles that described in patent No. 468,226, dated February 2, 1892, granted to William Painter, for improvements in bottle-sealing devices, than that of the complainant's apparatus. According to the method followed under that patent the cork disc was subjected to heavy pressure or a crushing operation. Painter says in the description:

"This crushing operation may be performed prior to the insertion of the disks into the caps; but it is best accomplished at the time the disk is forced into the cap, the latter having had its interior already coated with a film of well-dried shellac, and then heated sufficiently to melt the shellac and render it adhesive. * * * A cork disk as received from the cork-cutting machine is placed in the cap $B'$, previously coated inside with shellac and well heated, and then subjected to heavy crushing pressure," etc.

It was only after the cap and the shellac were heated that the assembling and uniting operations were completed by inserting the cork disc and forcing it down so that, to use the language of the description, "it is also well confined in the cap by the melted shellac." The patent does not disclose how long the closure remained under pressure, but it is natural and fairly may be inferred from the fact that the purpose of the patent and the method therein referred to was to cover a firmly united closure, that the "heavy compression" necessary to produce the "heavily-compressed sealing-disc" called for in the patent, had some duration as distinguished from a merely instantaneous blow. The method thus referred to in this prior and expired patent, aside from subsequent cooling under pressure, is substantially the operation of the defendant's machine so far as the assembling and binding together of the parts of the closure are concerned. In the machines held by the circuit court of appeals for the second circuit in Crown Cork & Seal Co. v. American Cork Specialty Co., 211 Fed. 650, not to infringe the Painter patents Nos. 792,284 and 887,838, but to infringe the Wheeler patent in suit, "the cork was inserted while the closure was being assembled; that is, before it was fed into the machine, and before it was subjected to any heat, while progressing under the influence of the star ring." Crown Cork & Seal Co. v. Brooklyn Bottle Stopper Co. (D. C.) 206 Fed. 473. That those machines were an infringement of the Wheeler patent there can be no doubt; but they radically differ from the defendant's apparatus and the fact that they were held to infringe is immaterial and without significance so far as the present case is concerned. After the district court had rendered its decision and prior to the decision by the court of appeals the defendants in that case constructed and operated certain apparatus in which "the closure is assembled without the cork, moved forward under the influence of the star ring, through the zone in which heat is applied directly from the burners, and then, while the holding parts of the machine are still in their heated condition, and while the tin, gum, and paper of the closure are in heated condition, the cork is added." The construction and operation of this latter apparatus were held to be a violation of the injunction issued with respect to the former and the defendants were adjudged in contempt. The Court of Appeals disapproved of the action of the court below, saying:

"We are satisfied that the District Judge should have left the question whether the changed device infringes to be settled upon an application for injunction, presumably in a new suit. To accomplish this result the decrees should be amended by inserting a clause which describes the infringing machines covered by said decrees as machines in which the combination of metal, cork, and binder is assembled before the processes of heating, fusing, pressing and cooling begin."

While the question now under consideration was not decided by the court of appeals, the above quoted language from its opinion tends to support the defendant's contention here. Further, it may not be an irrelevant or immaterial fact that in the apparatus referred to in the contempt proceedings there was an assembling plunger which, after the heating of the cap and adhesive medium and while they continued

heated, the adhesive medium being in a fused condition, deposited the cork disc in the cap and in contact with the fused adhesive medium. After such assembling of the cork disc with the metal cap and adhesive medium, the cork was left for sometime in contact with the fused adhesive medium, becoming heated by it, but not under uniting pressure, and, therefore, permitting the escape of air or gas until finally subjected to the action of a uniting plunger which compressed and firmly united the parts of the closure during the cooling period. There was thus a marked difference between such apparatus and that of the defendant here, in that in the latter the heating and pressure of the cork disc are simultaneous, there being no previous assembling of the three elements of the closure.

The mere operative result or function of the complainant's machine was not patented, but only the apparatus. Any one is at liberty to reach a result, not in itself patented, of a patented device, provided he does it by substantially different means or by means other than those to which the inventor is restricted by the provisions of his patent. In Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136, the court said:

"Even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value."

Here, not only is there a substantial difference in method adaptation between the apparatus of the complainant and that of the defendant, but the complainant is so restricted by the terms of the Wheeler patent as to exclude the alleged infringement. The bill must be dismissed with costs.