## SUNDH ELECTRIC CO. v. GENERAL ELECTRIC CO.

(District Court, N. D. New York. November 2, 1914.)

1. **PATENTS** (§ 326*)—**SUIT FOR INFRINGEMENT**—**PROCEDURE**—**NEW INFRINGEMENTS.**

Where, after an interlocutory decree adjudging the validity of a patent and enjoining its infringement, defendant commences the manufacture and sale of new devices, also claimed to infringe, it is correct practice for complainant to move for a supplementary decree bringing such devices within the operation of the injunction, instead of resorting to a motion to punish for contempt.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 613–619; Dec. Dig. § 326.*]

2. **PATENTS** (§ 328*) — **VALIDITY AND INFRINGEMENT** — **ALTERNATING CURRENT MAGNET.**

The Lindquist patents, Nos. 744,773 and 764,608, for an alternating current magnet, *held* not anticipated, valid, and infringed.

In Equity. Suit by the Sundh Electric Company against the General Electric Company. On motion for supplementary injunction. Granted.

Emerson R. Newell and Alfred Wilkinson, of New York City, for complainant.

Charles Neave, of New York City, for defendant.

RAY, District Judge. This court passed on the validity of the patents (Lindquist, Nos. 744,773 and 764,608) in Sundh Electric Co. v. General Electric Co., 198 Fed. 116, affirmed by the Circuit Court of Appeals 204 Fed. 277, 122 C. C. A. 475, and also on the question of infringement, a certain structure then before the court. The infringing device there is known on this motion as "defendant's infringing switch in suit." See Exhibit H. No final decree has been entered, as the accounting is now in progress.

[1] The defendant is putting out devices which complainant claims are plain infringements, and instead of resorting to a motion to punish for contempt the complainant brings this motion for a supplementary decree bringing within the operation of the injunction granted the devices so put out by defendant. I think this practice correct. Crown. Cork & Seal Co. v. American, 211 Fed. 653, 128 C. C. A. 154. I understand the practice prevails in the First circuit.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[2] The defendant not only denies infringement, but challenges, on this motion, the validity of the patents in suit, as well as infringement, and brings in for consideration alleged prior art not before considered. Instead of compelling the complainant to resort to a new suit, this court entertained this motion, listened to extended and elaborate arguments, and has reconsidered the whole question as to the construction, etc., of such patents in view of *all* the prior art now presented by defendant, as in no other way could this court intelligently and satisfactorily determine whether or not the new devices infringe. This has involved the examination of a number of patents, all the prior art, and many devices. From the strenuousness and pertinacity shown by defendant up to this date, this court is of the opinion that the Circuit Court of Appeals, in any event, will be called upon to give its decision on the new questions presented, and I will therefore content myself with giving conclusions.

There seems to have prevailed with the defendant, and some of the witnesses called by it, the idea that this court held or intended to hold that Lindquist calls for and demands geometrical symmetry between the main coil and the shading coil. This court did not so hold. It may be that the Lindquist patents *show* circularly arranged cores symmetrical with respect to the geometrical center of the whole magnet, but it is far from correct that this is of the essence of the claims. The main thing is not geometrical symmetry, but magnetic symmetry. What this court said and held was, and this was the holding of the Circuit Court of Appeals also:

"I do not think the geometrical arrangement of the magnet coils about the axis of much importance. * * * That degree of symmetry and geometric arrangement was necessary which would secure a substantial degree of uniformity in the direction and magnitude of electro-magnetic attraction upon the armature under the conjoint action of out-of-phase electric currents."

These were described. And, as to the use of the words, "constant and uniform pull on the armature," it was not intended to intimate that such a pull was absolutely or perfectly "steady," as such a pull could not be secured in an "alternating current magnet." This, it seems to me, is obvious. After going over the whole question and the new matter, and giving the subject careful consideration, I am of the opinion that Lindquist was the first to disclose how to produce a commercially successful alternating current polyphase magnet, and one which was operable from a single-phase two-line wire current. He materially reduced the cost of installation. This was new in the art and useful, and it is what defendant uses, and the various devices sought to be covered by extending the operation of the injunction are infringements.

The motion must be granted.